UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Della S.,[1]

        Plaintiff,                Case No. 20-cv-40 (DSD/LIB)

v.                          **REPORT AND RECOMMENDATION**

Andrew Saul,
Commissioner of Social Security,

        Defendant.

Plaintiff, Della S. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying her application for disability benefits. This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g). Both parties submitted cross-motions for summary judgment, [Docket Nos. 12, 14], and the Court took the matter under advisement on the written submissions.

For the reasons discussed herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 12], be **DENIED**, and that Defendant's Motion for Summary Judgment, [Docket No. 14], be **GRANTED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Accordingly, where the Court refers to Plaintiff by her name only her first name and last initial are provided.

## I. Procedural History

On November 16, 2015, Plaintiff filed an application for a period of disability and disability benefits, as well as, an application for supplemental security income. (Tr. 10).[2] Plaintiff alleged that her disability began on November 30, 2013. (Tr. 10). The Commissioner initially denied Plaintiff's present claims on June 13, 2016, and again, upon reconsideration, on January 11, 2017. (Tr. 10). On February 14, 2017, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 10).

Administrative Law Judge Amy Budney (hereinafter "ALJ") conducted a hearing on November 9, 2018, at which Plaintiff was represented by counsel. (Tr. 10). Plaintiff and an independent vocational expert, Thomas Nimberger, (hereinafter "IVE Nimberger") testified at the hearing. (Tr. 10). On May 6, 2019, the ALJ issued a decision denying Plaintiff's request for disability benefits and supplemental security income. (Tr. 10–25). The ALJ concluded that Plaintiff was not disabled within meaning of the Social Security Act. (Tr. 25).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 1–6). Subsequently, on November 9, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Accordingly, the ALJ's decision became the final decision of the Commissioner. See, 20 C.F.R. §§ 404.981, 416.1481.

On January 3, 2020, Plaintiff filed the present action. (Compl. [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, [Docket Nos. 12, 14], and the Court took the matter under advisement on the written submissions.

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, [Docket No. 9], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 67 exhibits. (See, Administrative Record [Docket No. 9]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

## II. Standards of Review

### A. Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience. See, 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B. Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See, 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the

Appeals Council's action. See, 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In the present case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled, (Tr. 1–6), thus making the ALJ's decision the final decision of the Commissioner.

### C. Judicial Review

This Court's judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner [through the ALJ] only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision (through the ALJ), the Court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that she is disabled. See, 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform prior relevant work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

### III. Decision Under Review in the Present Case

Before beginning the five-step disability evaluation process in the present case, the ALJ first determined that Plaintiff met the insured status requirement of Social Security Act through March 31, 2019. (Tr. 12). This finding is not in dispute.

Thereafter, the ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engage in substantial gainful activity "since November 30, 2013, the alleged onset date." (Tr. 12). This finding is <u>not</u> in dispute. The Court will refer to the period of time between November 30, 2013, and May 6, 2019, the date of the ALJ's decision, as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had "the following severe impairment: degenerative osteoarthritis of the knees, status post left surgery; lumbar degenerative disc disease; degenerative joint disease of the bilateral shoulders, anemia due to menorrhagia and gastrointestinal bleed; chronic pain syndrome; a major depressive disorder; a generalized anxiety disorder; a post-traumatic stress disorder; an adjustment disorder with mixed anxiety and depressed mood; and an alcohol use disorder." (Tr. 12–13) (citations omitted). Other than her generalized attack on the ALJ's characterization of the record as a whole, Plaintiff does not challenge the finding made by the ALJ at step two.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14–15). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listing 1.02, 1.03, 1.04, 5.02, 12.04, 12.06, and 12.15. (Tr. 14–15). Here again, other than her generalized challenge to the ALJ's characterization of the record as a whole, Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

[C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: the claimant could frequently reach overhead. The claimant could occasionally climb ramps and stairs, climb ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl. The claimant could understand, remember, and carry out simple, routine tasks. The claimant could superficially and occasionally interact with supervisors

>and coworkers and the public. Superficial interaction is defined as work that does not involve any work tasks such as arbitration, negotiation, confrontation, being responsible for safety of others, or direction work of others.

(Tr. 15). Plaintiff does challenge this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however," the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 16). Plaintiff does not specifically challenge this credibility finding by the ALJ.

Based on her RFC determination and relying on the testimony from the independent vocational expert, IVE Nimberger, the ALJ found that Plaintiff was able to perform her past relevant work as a "janitor/office cleaner." (Tr. 22–24). The ALJ's finding that Plaintiff could perform her past relevant work as a "janitor/office cleaner" is a sufficient, independent basis upon which the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. See, e.g., Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004).

Nevertheless, in addition to Plaintiff's past relevant work as a "janitor/officer cleaner," the ALJ found, that, "[i]n the alternative, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform." (Tr. 23–24). Here again, relying upon testimony from the independent vocational expert, IVE Nimberger, the ALJ specifically found that among the occupations Plaintiff would be able to perform were "mail clerk" of which there are 10,000 positions in the national economy; "packager" of which there are 19,000 positions in the national economy; and "wire worker" of which there are 25,000 positions in the national

economy. (Tr. 24). Plaintiff does not directly challenge the ALJ's finding at step four nor the ALJ's alternative finding at step five, but she implicitly challenges these findings in as much as they are based on the ALJ's RFC finding which Plaintiff does directly challenge.

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 25).

## IV. Analysis

Plaintiff purports to assert three general overarching issues on her appeal of the ALJ's decision: (1) that the opinion of Dr. Alford Karayusuf, M.D., was not entitled to great weight; (2) that the ALJ "ignored evidence that conflicted with her opinion" and "mischaracterized" other evidence; and (3) that the ALJ's RFC determination did not include "all credible limitations." (Plf.'s Mem., [Docket No. 13], at 11–14).

The Commissioner contends that he is entitled to summary judgment, arguing that Plaintiff's arguments are unavailing, and that the ALJ's opinion is supported by substantial evidence in the record. (Def.'s Mem. [Docket No. 15]).

### A. Weight Assigned to Dr. Karayusuf's February 1, 2016, Opinion.

On February 1, 2019, Plaintiff, at the request of the Social Security Administration, met with Dr. Karayusuf for a consultative examination. (Tr. 444–446). Dr. Karayusuf noted that Plaintiff had a history of traumas, including the "death of her infant daughter in 1992 from sudden infant death syndrome"; an automobile accident intentionally caused by Plaintiff's boyfriend, and the father of her children, which "caused the severe injuries to her two children";[3] long-term, continued physical abuse by her boyfriend; and sexual abuse when she was a child.

---

[3] Although the specifics are unclear from the record now before the Court, the record indicates that in July 2014, Plaintiff's then boyfriend, and the father of her children, intentionally caused an automobile accident with him and two of their children in the vehicle in an effort to kill himself and their two children after Plaintiff attempted to leave her abusive relationship with him. (See, Tr. 444–446, 481, 602, 721, 729, 999–1001). This incident left her two children severely injured, including rendering her then fourteen year old child paralyzed from the neck down.

8

(Tr. 444). Plaintiff reported that she was seeing a counselor, and she was taking "antidepressant medications." (Tr. 444). She further reported that she was feeling "despondent with recurring suicidal thoughts." (Tr. 444). Dr. Karayusuf noted Plaintiff's history of alcohol abuse and dependency, as well as, Plaintiff's reported attempt "to kill herself once by overdosing in 1997." (Tr. 444).

Regarding objective observations, Dr. Karayusuf noted that Plaintiff was oriented to time, place, and person, and her immediate digit recall was "fair." (Tr. 445). Plaintiff was able to recall "the names of three out of the last five presidents of the United States accurately but in mixed order"; to "subtract 15-6 accurately"; and to recall "one out of three unrelated objects after five minutes." (Tr. 445). She was unable to "subtract serial-7," and her "[r]ecent recall" was "impaired." (Tr. 445). Dr. Karayusuf observed that Plaintiff's mood was "moderately depressed," but her affect "was appropriate." (Tr. 445).

Based on the consultative examination, Dr. Karayusuf provided a "guarded" diagnosis of post-traumatic stress disorder; recurrent major depression, moderate with psychotic features; generalized anxiety disorder, moderate; and alcohol dependence in remission. (Tr. 446). Dr. Karayusuf opined that Plaintiff was "able to understand, retain and follow simple instructions," but "restricted to superficial, infrequent interactions with fellow workers, supervisors and the public." (Tr. 446). Dr. Karayusuf further opined that "[w]ithin these parameters and in the context of performing simple, routine, respective, concrete, tangible task" Plaintiff would be "able to maintain pace and persistence." (Tr. 446). Lastly, Dr. Karayusuf opined that Plaintiff would be "able to manage benefits." (Tr. 446).

After thoroughly discussing Dr. Karayusuf's February 1, 2016, opinion, the ALJ assigned the opinion "great weight." (Tr. 20, 22). The ALJ found "Dr. Karayusuf's assessment well

9

supported by findings on examination and consistent with other mental health evidence of record." (Tr. 22).

Defendant argues that the ALJ erred by assigning "great weight" to the February 1, 2016, opinion of Dr. Karayusuf. (Plf.'s Mem., [Docket No. 13], at 12). In support of this argument, Defendant asserts that Dr. Karayusuf's February 1, 2016, opinion should have been assigned some unspecified lesser weight because it was based on "a one time examination" which "predate[s] and conflict[s] with [Plaintiff's] August 2017, suicide attempt." (Id.).[4] The Court finds unpersuasive each of Defendant's argument here.

When evaluating medical opinion evidence the ALJ considers the following factors: whether the opinion was prepared by a provider who "examined" the plaintiff; whether the opining provider is a "treating source"; the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the degree to which the opinion is supported by the record, including the reasons given to support the opinion; the degree to which the opinion is consistent with the record as a whole; and whether or not the opinion was prepared by a "specialist." 20 C.F.R. § 404.1527(c).[5] No single factor is controlling. See, Id.

The Court's review of the record now before the Court finds that the ALJ properly considered each of these factors.[6] The Court finds that the ALJ's decision to assign "great

---

[4] Plaintiff also argues that the ALJ erred in assigning "great weight" to Dr. Karayusuf's February 1, 2016, opinion because the opinion was "is inconsistent with [Plaintiff's] own written reports and testimony of her social isolation, shortened attention span, and difficulties in following instructions." (Plf.'s Mem., [Docket No. 13], at 12). The Court finds this argument to be unpersuasive because it fails to account for the fact that the ALJ found Plaintiff's subjective reports "concerning the intensity, persistence and limiting effects of" her symptoms to be less than credible and inconsistent with the evidence in the record. (Tr. 16). And Plaintiff does not challenge the ALJ's credibility determination.

[5] Plaintiff's claim is governed by 20 C.F.R. § 404.1527. After Plaintiff initially filed the present claim, the Social Security Administration amended its rules governing the evaluation of medical opinions; however, those amendments do not apply to the present action because Plaintiff filed her claim before the March 27, 2017. See, 20 C.F.R. § 404.1527; Lucus v. Saul, 960 F.3d 1066, 1068 n.2 (8th Cir. 2020).

[6] Importantly, Plaintiff does not argue that the ALJ failed to consider these factors. Plaintiff merely disagrees with the ALJ's assessment of the factors relative to Dr. Karayusuf.

weight" to Dr. Karayusuf's February 1, 2016, opinion is supported by substantial evidence in the record as a whole.

First, regarding the factors considered, the ALJ, in her written opinion, specifically noted that the Plaintiff met with Dr. Karayusuf for a consultative examination at the behest of the Social Security Administration which demonstrates that the ALJ knew the length of the treatment relationship between Plaintiff and Dr. Karayusuf, as well as, the frequency of examination between Plaintiff and Dr. Karayusuf. The ALJ's discussion of the circumstances leading to Plaintiff's visit with Dr. Karayusuf further demonstrates that the ALJ considered the nature and extent of the treatment relationship between Plaintiff and Dr. Karayusuf, as well as, whether or not Dr. Karayusuf was a "specialist." In her discussion of Dr. Karayusuf's February 1, 2016, opinion ALJ also specifically considered the degree to which the opinion was supported by the record, as well as, the degree to which the opinion was consistent with the record as a whole. It is clear from the record that the ALJ considered each of the relevant factors in her evaluation of Dr. Karayusuf's February 1, 2016, opinion.

Nevertheless, Defendant argues that Dr. Karayusuf's February 1, 2016, opinion should have been assigned some unspecified lesser weight because it was based on a "one time examination." Although the relevant factors provide that "the longer a treating source has treated" a claimant "and the more times" the claimant has "been seen by a treating source, the more weight [the ALJ] will give the source's medical opinion," that is not, as Plaintiff implies, the same as providing that an opinion cannot be given "great weight" because it is based on a single consultative examination. See, 20 C.F.R. § 404.1527(c)(2). The ALJ may assign "significant weight" or even controlling weight to the opinion of a physician even if that physician has met with the plaintiff only a single time or even where a physician has never met

with the plaintiff. See, e.g., Hacker v. Barnhart, 459 F.3d 934, 939 (8th Cir. 2006); Adamczyk v. Saul, 817 F. App'x 287, 290 (8th Cir. 2020).

Notably, Plaintiff does not point to any other opinion regarding Plaintiff's mental impairments which is based on a longer treatment relationship. This lack of another mental health opinion in the record highlights one of the reasons the ALJ found Dr. Karayusuf's opinion—that Plaintiff's mental impairments were not as severe as alleged by Plaintiff—to be consistent with the record: Plaintiff's failure to seek consistent medical treatment for her alleged mental health impairments.

As the ALJ discussed in her written opinion, the record demonstrates a failure by Plaintiff to seek treatment for her alleged mental health conditions. The minimal amount of conservative mental health treatment in the record as a whole is inconsistent with Plaintiff's complaints of disabling mental impairments, and as the ALJ pointed out, consistent with Dr. Karayusuf's February 1, 2016, opinion. See, e.g., DeLuca v. Astrue, No. 10-cv-2032 (JNE/FLN), 2011 WL 2633851, at *13–14 (D. Minn. May 25, 2011) (citing Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004)), report and recommendation adopted, 2011 WL 2622384 (D. Minn. July 5, 2011); Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015); Buford v. Colvin, 824 F.3d 793, 797 (8th Cir. 2016).

Although Plaintiff asserts an alleged onset date of November 30, 2013, and complains of mental impairments arising from the father of her children intentionally causing an automobile accident in July 2014, in an attempt to kill himself and two of their children which resulted in severe injuries to her two children, the record now before the Court does not demonstrate any specific mental health treatment until June 4, 2015. (Tr. 591).

On June 2, 2015, Plaintiff presented to the University of Minnesota Medical Center, Fairview with an "alcohol problem," and she informed medical personal that she was "seeking detox and treatment." (Tr. 593). After she was "fully detoxed," she was given a psychiatric evaluation on June 4, 2015. (Tr. 591). As a result of that evaluation, Plaintiff was discharged as "medically and mentally stable." (Tr. 591). Plaintiff was "given resources regarding treatment options," and she was "encouraged to abstain from drugs and alcohol, [to] follow up with appointments," to "attend AA meetings," to "obtain a sponsor," and to "keep her sobriety." (Tr. 592). The record now before the Court does not indicate that Plaintiff complied with these recommendations or attended her follow up mental health appointments.

On the record now before the Court, Plaintiff does not appear to have sought any further mental health treatment until October 7, 2016, when she was referred for a psychotherapy consult by her treating physician due to her "depressed mood." (Tr. 481).[7] During that appointment, Plaintiff expressed wanting to establish "mental health counseling care to address depressed mood," and she reported a "history of mental health counseling care for alcohol abuse." (Tr. 481). Plaintiff was provided with therapeutic care information, and she was "scheduled" for a "new patient visit with [her provider] for" October 12, 2016. (Tr. 482). The record now before the Court, however, does not indicate that Plaintiff ever attended this follow up appointment or continued her mental health treatment with this provider.

The next mention of mental health treatment in the record is on August 9, 2017, after Plaintiff was brought to the emergency room upon having been found unresponsive. (Tr. 729).[8]

---

[7] Although Plaintiff met with Dr. Karayusuf on February 1, 2016, at the behest of the Social Security Administration, that was for the purposes of a consultative examination as opposed to treatment. (See, Tr. 444). During that consultative examination, Plaintiff referenced seeing a counselor at the "Courage Center"; however, there is no record of that counseling in the record now before the Court, and Plaintiff does not now argue that any such counseling records exist. (See, Plf.'s Mem. [Docket No. 13]).

[8] Plaintiff was taken to the emergency room by her daughter after Plaintiff's daughter found Plaintiff in an unresponsive state. (Tr. 729, 870–913). Plaintiff reported that she took "muscle relaxant and beer during an event,"

13

After Plaintiff received care during an overnight hospital, she reported to the North Point Health and Wellness Center for a follow up appointment. During this appointment, Plaintiff reported that she had "started counseling with [a] mental health worker," and she had "been referred to [a] psychiatrist." (Tr. 729). There are, however, no records now before the Court indicating that Plaintiff was then actually undergoing any "counsel with [a] mental health worker."

On October 30, 2018, Plaintiff presented to the North Point Health and Wellness Behavior Health Clinic for a diagnostic assessment. (Tr. 999). Plaintiff was observed to have a rambling, rapid speech pattern, as well as, a rambling thought process with a tearful affect and a "[d]epresses and [a]nxious" mood. (Tr. 1000–1001). The treatment notes for Plaintiff's October 30, 2018, visit indicate that the "plan" was for Plaintiff to "[c]ontinue [i]ndividual [t]herapy"; however, the record now before the Court does not contain any further mental health treatment.

This minimal amount of conservative mental health treatment in the record as a whole is inconsistent with Plaintiff's complaints of disabling mental impairments. See, e.g., DeLuca v. Astrue, No. 10-cv-2032 (JNE/FLN), 2011 WL 2633851, at *13–14 (D. Minn. May 25, 2011) (citing Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004)), report and recommendation adopted, 2011 WL 2622384 (D. Minn. July 5, 2011); Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015); Buford v. Colvin, 824 F.3d 793, 797 (8th Cir. 2016). And as the ALJ observed, this minimal amount of conservative mental health treatment is consistent with Dr. Karayusuf's February 1, 2016, opinion.

Plaintiff also argues that the ALJ erred in assigned "great weight" to Dr. Karayusuf's February 1, 2016, opinion because the opinion "predate[s] and conflict[s] with [Plaintiff's] August 2017, suicide attempt." (Plf.'s Mem., [Docket No. 13], at 12). Although Plaintiff fails to

---

and her unresponsiveness was a "reaction she had." (Tr. 729). Although some of the medical records refer to the incident as a suicide attempt, Plaintiff repeatedly reiterated that it was not a suicide attempt but rather an unintended consequence of the "muscle relaxant" combined with the alcoholic beverages. (Tr. 729, 870–913).

14

elaborate on this argument, she appears to be arguing that Dr. Karayusuf's opinion should have been assigned some unspecified lesser weight because it failed to account for later developments in the medical record, including Plaintiff's hospitalization in August 2017. The Eighth Circuit Court of Appeals has rejected this precise argument. Adamczyk v. Saul, 817 F. App'x 287, 290 (8th Cir. 2020).

Although Dr. Karayusuf's February 1, 2016, opinion did not account for medical evidence treatment records created after February 1, 2016, the ALJ did not err in assigning "great weight" to Dr. Karayusuf's February 1, 2016, opinion because the ALJ specifically reviewed all of the mental health records after February 1, 2016, and she found that Dr. Karayusuf's February 1, 2016, opinion was consistent with those records. (Tr. 20–22). An ALJ may assign an opinion "great weight" even where the opinion "failed to account for later developments," if the ALJ reviews the later developments in the medical record and find that the "subsequent evidence and the record as a whole were consistent with the" opinion. See, Adamczyk v. Saul, 817 F. App'x 287, 290 (8th Cir. 2020) (citing Harris v. Barnhart, 356 F.3d 926, 931 (8th Cir. 2004); 20 C.F.R. §§ 404.1527, 416.927(c)(4); Hacker v. Barnhart, 459 F.3d 934, 939 (8th Cir. 2006)). "In so finding, the ALJ simply weighed the evidence provided by medical professionals and other record evidence." Adamczyk v. Saul, 817 F. App'x 287, 290 (8th Cir. 2020) (citing Hacker v. Barnhart, 459 F.3d 934, 939 (8th Cir. 2006)).

This is exactly the findings reached by the ALJ in the present case—Dr. Karayusuf's February 1, 2016, opinion was consistent with the record as a whole, including evidence from after February 1, 2016. Thus, the ALJ did not err in assigning "great weight" to the February 1, 2016, opinion of Dr. Karayusuf.[9]

---

[9] Plaintiff's memorandum also makes a passing reference to the "State Agency" consultants' psychological "assessments [which] were given by doctors who ha[d] never examined or treated" Plaintiff and which predate

15

### B. Plaintiff's Highlighting of Other Evidence in the Record

Plaintiff next argues that the ALJ selectively highlighted portions of the record which supported her conclusion, and, relatedly, Plaintiff also argues that the ALJ mischaracterized "the nature of [Plaintiff's] August 2017 hospitalization." (Plf.'s Mem, [Docket No. 13], at 12–13).[10] The Court finds unpersuasive Plaintiff's arguments here.

The record now before the Court does not demonstrate that the ALJ "mischaracterized" Plaintiff's August 2017 hospitalization. As discussed above, in August 2017, Plaintiff was taken to the emergency room by her daughter after Plaintiff's daughter found Plaintiff in an unresponsive state. (Tr. 729, 870–913). During her overnight hospital stay, Plaintiff reported that she took "muscle relaxant and beer during an event," and her unresponsiveness was a "reaction she had." (Tr. 729). Although some of the medical records refer to the incident as a suicide attempt, Plaintiff repeatedly reiterated that it was not a suicide attempt but rather an unintended consequence of the "muscle relaxant" combined with the alcoholic beverages. (Tr. 729, 870–913). The ALJ's characterization of Plaintiff's August 2017 overnight hospital stay is supported by substantial evidence in the record, including Plaintiff's own characterization of the event.

Plaintiff's argument that the ALJ's description of Plaintiff's August 2017, hospital stay is a mischaracterization is less of an argument that the ALJ actually mischaracterized the records

---

Plaintiff's hospitalization in August 2017; however, Plaintiff does not actually argue that the ALJ erred in assigning "partial weight" to the State Agency consultants' psychological assessments. Plaintiff does not argue that the ALJ committed any error in assigning "partial weight" the State Agency consultants' psychological assessments. To the extent Plaintiff intended to argue that the ALJ erred in assigning "partial weight" to the State Agency consultants' opinions—because those opinions should have been assigned some unspecified lesser weight—based on the same arguments she raised in relation to Dr. Karayusuf's February 1, 2016, opinion, the Court finds this argument unpersuasive for the same reasons discussed in relation to Dr. Karayusuf's opinion. In evaluating the opinions of the State Agency consultants, the ALJ considered all of the relevant factors in finding that the opinions were "well supported" by the record as a whole, and further finding that "there [was] no subsequent evidence" after the issuance of those opinions "to support a departure from their conclusions." (Tr. 22). The ALJ did not commit reversible err in assigning "partial weight" to the State Agency consultants' opinions.

[10] Plaintiff also conclusorily asserts that the ALJ "ignored" evidence by "selectively cherry-pick[ing]" evidence in the record; however, after making this conclusory assertion, Plaintiff contradicts it by stating that the ALJ's conduct merely "borders on the impermissible 'cherry-picking' prohibited" by the caselaw. (See, Id.).

16

regarding that stay and more of an argument that the ALJ should have highlighted other portions of the records review by the ALJ. The same is true for Plaintiff's argument that the ALJ selectively highlighted the record. Plaintiff fails to point to any specific portion of the record that she believes the ALJ ignored; instead, Plaintiff asserts that the ALJ should have credited different portions of the records which the ALJ reviewed.

In making this argument, however, Plaintiff is merely highlights selective evidence she believes favorable to her claim, and she asks this Court to reevaluate said evidence to reach a different conclusion than that of the ALJ when she considered that same evidence. (See, Plf.'s Mem., [Docket No. 13], at 12–13). Plaintiff's argument lacks any assertion that the ALJ actually failed to consider the evidence to which Plaintiff now points. (See, Id.).

The Court may not, however, reverse the ALJ simply because substantial evidence supports an opposite conclusion. See, Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015). Nor can the Court substitute its own judgment or findings of fact for those of the ALJ, see, Woolf, 3 F.3d at 1213, because the Court "must consider evidence that both supports and detracts from the ALJ's decision," and "must affirm the denial of benefits if 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings.'" See, Milam, 794 F.3d at 983 (citations omitted) (emphasis added). Such is the present case now before the Court.

Plaintiff merely argues that the ALJ should have reached a different conclusion upon consideration of said evidence. Here, Plaintiff simply asks the Court to reweigh the evidence that the ALJ considered and come to a different conclusion than the ALJ; this the Court cannot do. See, Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213.

To be clear, Plaintiff does not argue that the record as a whole lacks substantial evidence to support the ALJ's RFC finding. Rather, Plaintiff's argument is that there is also substantial evidence in the record that also supports the opposite finding of disability. However, as already noted above, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the decision of the ALJ, then the Court must affirm the decision. See, Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009). Although Plaintiff may perceive evidence in the record which supports a finding in her favor, the record now before the Court when considered as a whole also contains substantial evidence which supports that ALJ's decision, and therefore, the Court must affirm the ALJ's decision. See, Robinson, 956 F.2d at 838; Bradley, 528 F.3d at 1115; Medhaug, 578 F.3d at 813. "The fact that there was some medical evidence supporting [Plaintiff's] position concerning the severity of her symptoms does not mean that the ALJ's decision was not supported by substantial evidence." Adamczyk v. Saul, 817 F. App'x 287, 290 (8th Cir. 2020) (citing Fentress v. Berryhill, 854 F.3d 1016, 1021 (8th Cir. 2017)).

### C. The RFC Includes all Credible Limitations

Plaintiff next argues that the ALJ's RFC determination was made in err because the ALJ "failed to completely incorporate [Plaintiff's] functional limitations in meeting the attendance and on-task requirements in competitive work." (Plf.'s Mem., [Docket No. 13], at 14). In support of this argument, Plaintiff points to only her subject reports of "her limitations in her ability to consistently focus on any activity due to overwhelming thoughts about her daughter's condition as well as isolating herself in her bedroom throughout the day." (Id.).

As discussed above, however, the ALJ specifically found Plaintiff's subjective reports "concerning the intensity, persistence and limiting effects of" her symptoms to be less than credible and inconsistent with the evidence in the record. (Tr. 16). And Plaintiff does <u>not</u> challenge the ALJ's credibility determination.

An ALJ's RFC determination "need only include those impairments and limitations found credible by the ALJ." <u>Vandenboom v. Barnhart</u>, 421 F.3d 745, 750 (8th Cir. 2005). In the present case, the ALJ did not find Plaintiff's subjective complaints to be entirely credible, and Plaintiff does not challenge this credibility finding. Therefore, the ALJ was not required to fully incorporate Plaintiff's subjective limitations into the RFC determination. <u>See</u>, <u>Vandenboom v. Barnhart</u>, 421 F.3d 745, 750 (8th Cir. 2005). The ALJ's RFC determination properly included all impairments that were accepted by the ALJ as true and excluded other subjective reports that the ALJ had reasons to discredit. <u>See</u>, <u>gen.</u>, <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1220 (8th Cir. 2001); <u>Chamberlain v. Shalala</u>, 47 F.3d 1489, 1495–96 (8th Cir. 1995).

### D. Substantial Evidence

The Court's review of the record as a whole indicates that the ultimate decision that Plaintiff was not disabled as defined by the Social Security Administration Act during the adjudicated period was supported by substantial evidence in the record.

Specifically, on the Court's review of the record as a whole, the ALJ's decision to discount Plaintiff's subjective complaints, her RFC determination, her decision that Plaintiff could perform her past relevant work as a "janitor/office cleaner" within the RFC determination, and her alternative decision that jobs existed in significant numbers in the national economy which Plaintiff could perform within the RFC determination were each supported by substantial evidence in the record.

**V. Conclusion**

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's Motion for Summary Judgment, [Docket No. 12], be **DENIED**; and

2. Defendant's Motion for Summary Judgment, [Docket No. 14], be **GRANTED**.


Dated:  January 27, 2021                             s/Leo I. Brsbois
                                                     Hon. Leo I. Brisbois
                                                     United States Magistrate Judge


**NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).